**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 15-3171
_____

MAUREEN MIRABELLA; JOHN MIRABELLA

v.

SUSAN VILLARD; WILLIAM VILLARD;
SUSAN BRAUN; ROBERT BRAUN;
MONTGOMERY TOWNSHIP BOARD OF
SUPERVISORS; SUPERVISOR JOSEPH P. WALSH;
SUPERVISOR MICHAEL J. FOX;
SUPERVISOR ROBERT J. BIRCH, Esq.;
SUPERVISOR CANDYCE FLUEHR CHIMERA;
MONTGOMERY TOWNSHIP;
SUPERVISOR JEFFREY W. MCDONNELL

Joseph P. Walsh; Jeffrey W. McDonnell,
Appellants
_____

APPEAL FROM THE UNITED STATES
DISTRICT COURT FOR THE EASTERN DISTRICT
OF PENNSYLVANIA
(D.C. No. 2-14-cv-07368)
District Judge: Honorable Berle M. Schiller

_____

Argued: July 12, 2016
_____

Before: FUENTES,[*] SHWARTZ and RESTREPO,
Circuit Judges.

(Filed: April 4, 2017)
_____

Harry G. Mahoney   [ARGUED]
Peter R. Kulp
Deasey, Mahoney & Valentini
1601 Market Street
Suite 3400
Philadelphia, PA 19103

   *Counsel for Appellants Joseph P. Walsh and Jeffrey
   W. McDonnell*

John Mirabella [ARGUED]
1600 Market Street
Suite 1810
Philadelphia, PA 19103

   *Counsel for Appellees*

_____

   [*]   Honorable Julio M. Fuentes assumed senior status on July 18, 2016.

2

_____

OPINION OF THE COURT
_____

RESTREPO, Circuit Judge.

Appellees Maureen and John Mirabella petitioned their local government for assistance in a dispute with their neighbors and, at the same time, threatened the local government with litigation. A local official responded, via email, by barring the Mirabellas from communicating directly with any members of the local government, other than its counsel. Local officials also threatened to move for sanctions against the Mirabellas for frivolous litigation if they filed suit.

The Mirabellas allege that the government officials violated their First Amendment rights in two ways: (1) by retaliating against the Mirabellas for the exercise of their First Amendment rights and (2) by violating the Mirabellas' First Amendment right to petition the government for redress of grievances. As to these claims, the District Court denied the Defendants' motions to dismiss and denied qualified immunity. The government officials now appeal on qualified immunity grounds. For the reasons below, we conclude that the Mirabellas have adequately alleged both a retaliation claim and a violation of their right to petition. The rights allegedly violated, however, were not clearly established for the purpose of qualified immunity. Therefore, we are constrained to reverse.

**I**[1]

This case arises out of a dispute between the Mirabellas and their neighbors regarding a public wetlands abutting their properties. The wetlands is owned by Montgomery Township, Pennsylvania. The Mirabellas allege that their neighbors extended their backyards into the public wetlands by attempting to fence in the open space, placing playground equipment there and landscaping it.

The Mirabellas complained to the Township, which removed the fence, required the neighbors to move their playground equipment and—initially—required the neighbors to stop landscaping the open space. Nevertheless, the Mirabellas allege, the neighbors continued to "cut and clear" the open space "using driving mowers, weed whackers, push mowers, chainsaws and other means." App. 39. The Mirabellas continued to complain about this, but the Township ultimately reversed course and gave the neighbors permission to mow the open space.

The Mirabellas viewed the Township's response as overly permissive and environmentally destructive. For these reasons, the Mirabellas—who are both attorneys—notified the Township Board of Supervisors by email that they intended to sue their neighbors for "encroachment and destruction" of the open space. App. 119. The Mirabellas protested "the Board's failure to . . . protect our natural open

---

[1] We recite the facts only as necessary for the purposes of this appeal, which involves a single count of a nine-count complaint. The only remaining defendants are Appellants Joseph Walsh and Jeffrey McDonnell.

4

spaces," which put them "in the position of having to sue neighbors in order to see that our environment is preserved." *Id.* The Mirabellas further stated that as the owner of the open space, "the Township will be an indispensable party in this litigation." *Id.* Walsh and McDonnell interpreted this as a threat that the Mirabellas would sue the Township.

On the same day the Mirabellas ostensibly threatened litigation, the Township responded. Appellant Joseph Walsh, Chairperson of the Board of Supervisors, wrote to the Montgomery Township Solicitor and copied the Mirabellas. Walsh wrote that "[i]f the Township is sued by the Mirabellas make sure our insurance counsel motions the court for sanctions . . . as they have no standing to file such a frivolous action." App. 121. Another member of the Board of Supervisors, Appellant Jeffrey McDonnell, concurred later that evening. He wrote: "I agree. I would also suggest our [attorney] put them on notice now that we will seek san[c]tions so there's no surprise." App. 126.

John Mirabella replied within minutes defending the potential lawsuit as non-frivolous. He requested that the Board of Supervisors provide "any legal authority to support the Board's decision and your claim that we do not have standing." App. 123.

Later that night, at 11:26 p.m., Walsh replied from his iPhone. Walsh's email—later an impetus for the Mirabellas' First Amendment claims—stated:

> Dear Mr[.] Mirabella and his wife attorney. Please direct all further communications to the Township attorney. *Please never contact me,*

5

*the Board of Supervisors or the Township employees directly.* Do not call me at work, email me at work or speak to me in public or private. The dye is caste [sic].

App. 125 (emphasis added). Walsh copied this "no contact"[2] email to numerous Township officials, including the Board of Supervisors, Township Manager, Planning and Zoning Director and members of the police department.

Thereafter, the Mirabellas attended one meeting of the Board of Supervisors, at which they allegedly protested the destruction of the open space and expressed their "dismay and anger" over Walsh and McDonnell's emails. App. 45.

The Mirabellas filed this lawsuit under 42 U.S.C. § 1983, alleging, *inter alia*, violations of their First Amendment rights. The defendants filed motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), in which they asserted a qualified immunity defense. The District Court dismissed all of the Mirabellas' claims except for certain First Amendment claims against Walsh and McDonnell.

In its opinion, the District Court construed the Mirabellas' surviving First Amendment claims as alleging

---

[2] The term "no contact" is used to refer to a rule of professional conduct, prohibiting contact with a represented person, regarding the subject of the representation, absent consent or legal authority. 2 Geoffrey C. Hazard, Jr. et al., *The Law of Lawyering* § 39.01 (4th ed. 2016). We discuss Pennsylvania's rule in more detail below. *See infra* Part IV(A)(3).

6

two violations: (1) retaliation against the Mirabellas for the exercise of their First Amendment rights to free speech and to petition the government for redress of grievances and (2) a direct violation of the Mirabellas' First Amendment right to petition the government. As to both claims, the District Court found that the Mirabellas had pled a constitutional violation. The District Court denied qualified immunity via a very brief analysis. Walsh and McDonnell now appeal, alleging that they are entitled to qualified immunity on both claims.

## II

The District Court had jurisdiction pursuant to 28 U.S.C. § 1331. We have jurisdiction over the District Court's denial of qualified immunity under 28 U.S.C. § 1291 and the collateral order doctrine. *L.R. v. Sch. Dist. of Phila.*, 836 F.3d 235, 240 (3d Cir. 2016). The qualified immunity issue before us is solely a question of law and is, therefore, immediately appealable as a final order. *Zaloga v. Borough of Moosic*, 841 F.3d 170, 174 n.3 (3d Cir. 2016). We exercise plenary review. *L.R.*, 836 F.3d at 241. As this is an appeal from the denial of a motion to dismiss, we accept the allegations in the complaint as true. *Mammaro v. New Jersey Div. of Child Prot. & Permanency*, 814 F.3d 164, 166 (3d Cir. 2016).

## III

"Qualified immunity shields federal and state officials from money damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 563 U.S. 731,

7

735 (2011) (citation omitted). "A Government official's conduct violates clearly established law when, at the time of the challenged conduct, '[t]he contours of [a] right [are] sufficiently clear' that every 'reasonable official would [have understood] that what he is doing violates that right.'" *Id.* at 741 (alterations in original) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).

To determine if a right is clearly established, we first look for Supreme Court precedent. *Mammaro*, 814 F.3d at 169. If there is none, we may rely on a "'robust consensus of cases of persuasive authority' in the Court[s] of Appeals." *Id.* (quoting *Taylor v. Barkes*, 135 S.Ct. 2042, 2044 (2015) (per curiam)). "[A]lthough earlier cases involving fundamentally similar facts can provide especially strong support for a conclusion that the law is clearly established, they are not necessary to such a finding." *L.R.*, 836 F.3d at 248 (quoting *Hope v. Pelzer*, 536 U.S. 730, 741 (2002)).

We exercise our discretion to decide which of the two prongs of the qualified immunity analysis to address first "in light of the circumstances in the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). For reasons of constitutional avoidance, we may begin by determining whether a right was clearly established. *Camreta v. Greene*, 563 U.S. 692, 705 (2011). Yet in other cases "following the two-step sequence—defining constitutional rights and only then conferring immunity—is sometimes beneficial to clarify the legal standards governing public officials." *Id.* at 707.

In the Mirabellas' case, we exercise our discretion to follow the two-step sequence. We do so in order to guide local officials in safeguarding the First Amendment rights of

8

constituents in challenging circumstances: when the government's constituents are also litigation adversaries. *See Am. Canoe Ass'n, Inc. v. City of St. Albans*, 18 F. Supp. 2d 620, 621 (S.D.W.Va. 1998) (observing that the "[g]overnment remains the servant of the people, even when citizens are litigating against it").

## IV

The Mirabellas allege—in the first of two claims on appeal—that local officials Walsh and McDonnell retaliated against them for the exercise of their First Amendment rights. We conclude that the Mirabellas have pled a retaliation claim based upon Walsh's "no contact" email, but not Walsh and McDonnell's threat that they would move for litigation sanctions. As to the second prong of qualified immunity, we conclude that the right was not clearly established.

## A

"Official reprisal for protected speech 'offends the Constitution [because] it threatens to inhibit exercise of the protected right.'" *Hartman v. Moore*, 547 U.S. 250, 256 (2006) (citation omitted). To plead retaliation for the exercise of First Amendment rights, a plaintiff must allege "(1) constitutionally protected conduct, (2) retaliatory action sufficient to deter a person of ordinary firmness from exercising his constitutional rights, and (3) a causal link between the constitutionally protected conduct and the retaliatory action." *Thomas v. Indep. Twp.*, 463 F.3d 285, 296 (3d Cir. 2006) (citation omitted); *see also Mack v. Warden Loretto FCI*, 839 F.3d 286, 297 (3d Cir. 2016) (applying this

test to a claim of retaliation for the exercise of the right to petition).

**1**

The first element of the Mirabellas' retaliation claim is straightforward. The parties do not dispute that the Mirabellas exercised their First Amendment rights—both their right to free speech and their right to petition the government for redress of grievances. The Mirabellas engaged in constitutionally protected speech and petitioning when they protested the Township's failure to protect the open space and threatened litigation. "Both the Free Speech Clause and the Petition Clause protect 'personal expression'—both expression generally and expression directed towards the government for the specific purpose of asking it to right a wrong." *Mack*, 839 F.3d at 297-98.[3]

**2**

As to the second element of the retaliation claim, the parties dispute whether there was a retaliatory act "sufficient to deter a person of ordinary firmness." *Thomas*, 463 F.3d at 296. We conclude that Walsh's "no contact" email met this

---

[3] We will discuss the First Amendment right to petition the government in greater detail below, in the context of the Mirabellas' second claim, which alleges a direct violation of their right to petition. As explained below, the right to free speech and the right to petition are not necessarily coextensive, although this is immaterial to our analysis of the Mirabellas' retaliation claim. *See infra* Part V(A).

standard, but that Walsh and McDonnell's threat that they would move for litigation sanctions did not.[4]

As a preliminary matter, we reject Walsh and McDonnell's argument that the second element cannot be satisfied because the Mirabellas were undeterred in the exercise of their constitutional rights and, for example, attended one meeting of the Board of Supervisors after Walsh sent the "no contact" email. This argument fails because whether an act is retaliatory is an objective question. *Bistrian v. Levi*, 696 F.3d 352, 376 (3d Cir. 2012). We ask whether the act would deter a person of ordinary firmness, not whether the plaintiff was deterred. There is good reason for such a rule: we will not "'reward' government officials for picking on unusually hardy speakers. At the same time, we recognize that government officials should not be liable when the plaintiff is unreasonably weak-willed . . . ." *Bennett v. Hendrix*, 423 F.3d 1247, 1252 (11th Cir. 2005) (citation omitted). We now consider the two retaliatory acts alleged.

---

[4] At this level, we construe Walsh and McDonnell's actions as being made "under color of state law" for the purposes of 42 U.S.C. § 1983. This requirement can be met where the defendant either: (1) acts in his or her official capacity or (2) "purports to act according to official power." *Barna v. City of Perth Amboy*, 42 F.3d 809, 816 (3d Cir. 1994). Construing the allegations in the Mirabellas' favor, Walsh and McDonnell either acted or purported to act, respectively, as chairperson and member of the Board of Supervisors.

11

**i**

The first allegedly retaliatory act is Walsh's "no contact" email. In this email, Walsh prohibited the Mirabellas from contacting government employees, as follows: "Please direct all further communications to the Township attorney. Please never contact me, the Board of Supervisors or the Township employees directly. Do not call me at work, email me at work or speak to me in public or private. The dye is caste [sic]." App. 125. Construing all inferences in favor of the Mirabellas, we agree with the District Court that this email "is significantly more than a direction to contact the town attorney regarding the [threatened] lawsuit. This is a complete prohibition against Plaintiffs contacting town officials and employees for any reason." App. 17. In short, Walsh barred the Mirabellas from communicating directly with their local government, for any reason, indefinitely. This prohibition was "sufficient to deter a person of ordinary firmness from exercising his constitutional rights." *Thomas*, 463 F.3d at 296.

In concluding that Walsh's "no contact" email was retaliatory, we draw upon and distinguish a similar First Amendment retaliation case decided by the Second Circuit. In *Tuccio v. Marconi*, a real estate developer filed a lawsuit against a town where he sought to do business. 589 F.3d 538, 540 (2d Cir. 2009). Because of this pending lawsuit, town officials refused to meet with the developer in person, and advised him to communicate with them in writing. The developer then filed a second lawsuit, alleging that the town officials' refusal to meet with him was retaliatory. After a trial on the retaliation claim, judgment was entered for the town and the Second Circuit affirmed. The Second Circuit

12

held that the town's decision not to meet with the developer—a litigation adversary—was not a retaliatory act. *Id.* at 541-42. In reaching this conclusion, *Tuccio* emphasized that the developer "had no business with the Town" other than the lawsuit. *Id.* at 541. *Tuccio* further explained that "the result might be different" if the prohibition had "been implemented in a manner that effectively denied Tuccio access to permits or opportunities to do business with the Town," but that the trial record demonstrated that this had not occurred. *Id.*

The result *is* different in the Mirabellas' case, because unlike the developer in *Tuccio*, the Mirabellas have alleged "business with" their local government. *Id.* The Mirabellas live in Montgomery Township and have alleged a myriad of interests, for which they may petition the Township. Walsh's email bars the Mirabellas from communicating with Township employees about any topic, not only the threatened litigation, as to which limits on communication might have been "prudent." *Id.* at 542. Thus, we conclude that Walsh's "no contact" email was a retaliatory act.[5]

---

[5] Our analysis of the Mirabellas' retaliation claim does not turn on whether Walsh's "no contact" email was itself unconstitutional. In a retaliation claim, we ask instead "whether the Government is *punishing* the plaintiffs for exercising their rights." *Miller v. Mitchell*, 598 F.3d 139, 148 n.9 (3d Cir. 2010) (emphasis in original) (quoting *Anderson v. Davila*, 125 F.3d 148, 161 (3d Cir. 1997)). We will return to the constitutionality of Walsh's "no contact" email in the context of the Mirabella's direct Petition Clause claim. *See infra* Part V(B).

**ii**

The Mirabellas also allege that both Walsh and McDonnell retaliated against them by stating that if the Mirabellas sued the Township, the Township would move for sanctions for frivolous litigation. Significantly, this alleged act of retaliation is a particular kind—one taking the form of the official's own speech. *McLaughlin v. Watson*, 271 F.3d 566, 573 (3d Cir. 2001) (quoting *Suarez Corp. Indus. v. McGraw*, 202 F.3d 676, 687 (4th Cir. 2000)); *see also Zaloga*, 841 F.3d at 176. In such circumstances we employ a more specific test to determine whether the official's speech amounts to a retaliatory act. We ask whether there was "a threat, coercion, or intimidation, intimating that punishment, sanction, or adverse regulatory action will follow." *McLaughlin*, 271 F.3d at 573 (quoting *Suarez Corp. Indus.*, 202 F.3d at 687).

This standard is not met by Walsh and McDonnell's statements that if the Mirabellas sued the Township, they would move a court for sanctions. In such statements, the "quantum of governmental authority brought to bear" was minimal. *R.C. Maxwell Co. v. Borough of New Hope*, 735 F.2d 85, 88 (3d Cir. 1984); *see also Novoselsky v. Brown*, 822 F.3d 342 (7th Cir. 2016) (holding that there was no retaliatory act where government official filed an attorney disciplinary complaint against the plaintiff and publicly accused him of litigiousness). As such, the Mirabellas' retaliation claim must succeed, if at all, on Walsh's "no contact" email, not the threat of motioning for litigation sanctions.

14

**3**

The third element of a retaliation claim requires a causal link between a plaintiff's constitutionally protected activity and the retaliatory act. *Thomas*, 463 F.3d at 296. The required link is "but-for" causation. *Hartman*, 547 U.S. at 256. "[A]ny . . . plaintiff charging official retaliatory action . . . must prove the elements of retaliatory animus as the cause of injury, and the defendant will have the . . . opportunity to respond to a prima facie case by showing that the action would have been taken anyway, independently of any retaliatory animus." *Id.* at 260-61. One method of proving a causal link, applicable here, is "unusually suggestive temporal proximity." *Lauren W. v. Deflaminis*, 480 F.3d 259, 267 (3d Cir. 2007). The Mirabellas have alleged such a causal link. On the very same day that the Mirabellas emailed the Township to protest its treatment of the open space, and to threaten litigation, Walsh responded with the "no contact" email.[6]

Although this "would normally be enough to carry a complaint across the starting line in the face of a Rule 12(b)(6) motion," we must address one counter-argument. *Maloy v. Ballori-Lage*, 744 F.3d 250, 253 (1st Cir. 2014).

---

[6] This allegation of temporal proximity is itself sufficient. In addition, we infer that Walsh's "no contact" email was a direct response to the threat of litigation because of Walsh's concluding message, "[t]he dye is caste [sic]." App. 125. Construing this statement in favor of the Mirabellas, we infer that Walsh meant that the Mirabellas cast the die by threatening litigation against the Township.

Walsh argues that there is "another explanation that is so obviously correct as to render the charge of improper motivation implausible." *Id.* (citation omitted); *see also George v. Rehiel*, 738 F.3d 562, 586 (3d Cir. 2013) (holding that there was an alternative explanation (airline security) that was "obvious" on the fact of the complaint). Specifically, Walsh contends that his email was merely a demand that the Mirabellas—both attorneys—follow the "no contact" rule of the Pennsylvania Rules of Professional Conduct. This argument fails because Walsh's prohibition swept far more broadly than the rule.

Rule 4.2 of the Rules of Professional Conduct provides that a lawyer, representing a client, "shall not communicate about the subject of the representation with a person the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized to do so by law or a court order." Pa.R.P.C. 4.2. This prohibition is narrower than Walsh's "no contact" email, for at least three reasons: Rule 4.2 (1) is limited to the subject of the representation; (2) is limited to a person represented by counsel in the matter and (3) contains an "authorized by law" exception, which safeguards constitutionally-protected expression. *Id.; see also* Pa.R.P.C. 4.2, cmt. ¶¶ 4, 5, 7. Walsh's "no contact" email contained none of these three limitations.[7]

---

[7] We pass no judgment as to whether Rule 4.2 of the Pennsylvania Rules of Professional Conduct applies where, as here, lawyers represent themselves *pro se*. *See* Hazard et al., *supra* note 2, § 41.03; *Restatement (Third) of the Law Governing Lawyers* § 99, cmt. ¶ e (Am. Law Inst. 2016).

16

Thus, we reject Walsh's attempt to justify his email by reference to Rule 4.2. The Mirabellas have pled causation, the final element of their First Amendment retaliation claim.

**B**

Having held that the Mirabellas adequately alleged a First Amendment retaliation claim based upon Walsh's "no contact" email, our inquiry is not complete. We must nevertheless determine whether the right was clearly established under the second prong of qualified immunity.

In this analysis we are mindful that we must not "define clearly established law at a high level of generality." *al-Kidd*, 563 U.S. at 742. More specifically, the Supreme Court has given us guidance on defining a right in the First Amendment retaliation context. In *Reichle v. Howards*, the Supreme Court clarified that it is too broad to define the right as the "right to be free from retaliation for one's speech." 132 S.Ct. 2088, 2094 (2012). Conversely, *Reichle* held that is proper to define a right as the "right to be free from a retaliatory arrest that is otherwise supported by probable cause." *Id.*

*Reichle* is directly applicable to the Mirabellas' retaliation claim. As in *Reichle*, the disputed issue here is whether it was clearly established that the defendant's act was retaliatory.[8] Paralleling *Reichle*, we define the right at issue

---

[8] In other First Amendment retaliation cases, the disputed issue may be whether it was clearly established that the plaintiff's conduct was constitutionally protected. *See,*

17

as the right to be free from a retaliatory restriction on communication with one's government, when the plaintiff has threatened or engaged in litigation against the government.

This right was not clearly established when Walsh sent the "no contact" email. The Mirabellas have identified neither Supreme Court precedent nor a "robust consensus of cases of persuasive authority." *Mammaro*, 814 F.3d at 169 (citation omitted). The closest case we have identified, *Tuccio*, held that the refusal of town officials to meet with a litigation adversary did not amount to First Amendment retaliation. *Tuccio*, 589 F.3d at 541-42. Thus, Walsh is entitled to qualified immunity on the Mirabellas' First Amendment retaliation claim.

## V

The Mirabellas also assert a direct violation of their First Amendment right to petition the government for redress of grievances, again based upon Walsh's "no contact" email. We conclude that the Mirabellas have pled a constitutional violation, but that the right was not clearly established for qualified immunity purposes.

## A

The First Amendment of the United States Constitution provides that "Congress shall make no law . . . abridging the freedom of speech, . . . or the right of the people . . . to petition the Government for a redress of grievances."

---

*e.g.*, *Dougherty v. Sch. Dist. of Phila.*, 772 F.3d 979, 993-94 (3d Cir. 2014).

18

U.S. Const. amend. I. These two guarantees are known, respectively, as the Speech Clause and the Petition Clause.

The right to petition the government is "one of 'the most precious of the liberties safeguarded by the Bill of Rights.'" *BE & K Constr. Co. v. NLRB*, 536 U.S. 516, 524 (2002) (quoting *United Mine Workers of Am., Dist. 12 v. Ill. State Bar Ass'n*, 389 U.S. 217, 222 (1967)). "The very idea of a government, republican in form, implies a right on the part of its citizens to meet peaceably for consultation in respect to public affairs and to petition for a redress of grievances." *United States v. Cruikshank*, 92 U.S. 542, 552 (1875). Petitioning serves numerous, fundamental interests of petitioners and the government alike. It is "essential to freedom," liberty and self-government. *Borough of Duryea v. Guarnieri*, 564 U.S. 379, 382, 394 (2011); *see also McDonald v. Smith*, 472 U.S. 479, 483 (1985). Petitions contribute to the "public airing" of disputes, the "evolution of the law," and the use of government as an "alternative to force." *BE & K Constr.*, 536 U.S. at 532.

In *Borough of Duryea v. Guarnieri*, the Supreme Court recently renewed its Petition Clause jurisprudence, with a focus on the historical underpinnings of the right. 564 U.S. at 387-97; *see also* Ronald J. Krotoszynski, Jr., *Reclaiming the Petition Clause* 104-28 (2012) (chronicling the history of petitioning in the United States, including its importance in the abolitionist movement). The Supreme Court described the "special concerns" of the Petition Clause, as compared to the Speech Clause, as follows: "The right to petition allows citizens to express their ideas, hopes, and concerns *to their government and their elected representatives*, whereas the right to speak fosters the public exchange of ideas that is

19

integral to deliberative democracy as well as to the whole realm of ideas and human affairs." *Id.* at 388 (emphasis added).

A petition may "undoubtedly" consist of a "personal grievance addressed to the government." *Id.* at 394. But "[p]etitions to the government assume an added dimension when they seek to advance political, social, or other ideas of interest to the community as a whole." *Id.* at 395. A petition need not "take[] a specific form," and may include an oral grievance. *Mack*, 839 F.3d at 299 (citation omitted).

A petition enjoys constitutional protection whether it is addressed, as here, to a local government, or to a state or national government. *See, e.g.*, *NAACP v. Claiborne Hardware Co.*, 458 U.S. 886, 889 (1982) (petition and boycott directed at county officials); *Brown v. Louisiana*, 383 U.S. 131, 142 (1966) (protest of segregated public library); *Holzemer v. City of Memphis*, 621 F.3d 512, 519 (6th Cir. 2010) (oral request to city councilperson); *Van Deelen v. Johnson*, 497 F.3d 1151, 1158 (10th Cir. 2007) (appeal of county property tax assessment). A petition may be directed towards any department of government, including the courts. *Guarnieri*, 564 U.S. at 387; *BE & K Constr.*, 536 U.S. at 525; *see also Anderson v. Davila*, 125 F.3d at 162-63 (holding that the right to petition includes actions taken in anticipation of litigation).

At the same time, the right to petition is not "[u]nrestrained," *Guarnieri*, 564 U.S. at 390, or "absolute," *McDonald*, 472 U.S. at 484. For example, the Supreme Court has held that "petitions to the President that contain intentional and reckless falsehoods 'do not enjoy

constitutional protection.'" *McDonald*, 472 U.S. at 484 (citation omitted). Accordingly, we may ask whether the government may "nevertheless burden" the right to petition, given countervailing government interests. *BE & K Constr.*, 536 U.S. at 535.

To balance such competing interests, courts have generally applied Speech Clause precedent, rather than any freestanding Petition Clause doctrine.[9] *Guarnieri*, 564 U.S. at 389 (acknowledging this trend); *see also Galena v. Leone*, 638 F.3d 186, 197 n.7 (3d Cir. 2011) (considering speech and petition claims as one); *Eichenlaub v. Twp. of Indiana*, 385 F.3d 274, 281 (3d Cir. 2004) (same). But *Guarnieri* clarified that we cannot do so automatically. For while the right to petition and the right to free speech "share substantial common ground," they are not "identical in their mandate or their purpose and effect." *Guarnieri*, 564 U.S. at 388. Accordingly, the Supreme Court cautioned that "Speech Clause precedents [do not] necessarily and in every case resolve Petition Clause claims." *Id.* Despite this guidance, however, *Guarnieri* did apply Speech Clause precedent, rather than forge new ground under the Petition Clause. *Id.* at 382-83.

---

[9] That said, the Petition Clause has been interpreted independently from the Speech Clause in the antitrust context. *United Mine Workers of Am. v. Pennington*, 381 U.S. 657 (1965); *E. R.R. Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127 (1961).

21

## B

With this background in mind, we turn to the Mirabellas' claim that Walsh violated their right to petition by prohibiting them from contacting any Township employees, other than its counsel. To answer this question, we will apply free speech precedent, as the Supreme Court did in *Guarnieri*. *Id.* We conclude that this is appropriate given the "extensive common ground" of the two rights, and the Supreme Court's own example. *Id.* at 389. As such, our analysis would be identical if the Mirabellas had framed their argument as a free speech claim, rather than a violation of their right to petition the government.

## 1

Drawing upon free speech precedent, the Mirabellas encourage us to apply a test that is highly deferential to their First Amendment rights, on at least two theories. First, the Mirabellas assert that Walsh's email is a content-based restriction on their speech. *Cf. Nat'l Assoc. for the Advancement of Multijurisdiction Practice (NAAMJP) v. Castille*, 799 F.3d 216, 222-23 (3d Cir. 2015) (explaining that speaker-based restrictions on speech are subject to heightened scrutiny when they reflect content-based preferences). Second, the Mirabellas assert that Walsh's email is a restriction on their political speech. *See Citizens United v. FEC*, 558 U.S. 310, 340 (2010).

We decline to determine whether these theories apply. Rather, we will assume for the sake of argument that Walsh's "no contact" email is a content-neutral, "time, place or manner" restriction on the Mirabellas' speech. It is

22

unnecessary to apply greater scrutiny to the restriction because, as explained below, even under a standard more deferential to Walsh, the "no contact" email is unconstitutional. *Cf. McCullen v. Coakley*, 134 S.Ct. 2518, 2530 (2014) (recognizing cases that make such an assumption, but declining to adopt the same approach).

Given a content-neutral, "time, place or manner" restriction on speech, our inquiry is whether the prohibition is narrowly tailored. *Turner Broad. Sys., Inc. v. FCC*, 512 U.S. 622, 662 (1994); *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989). We ask whether the restriction "'burden[s] substantially more speech than is necessary to further the government's legitimate interests.'" *McCullen*, 134 S.Ct. at 2535 (quoting *Ward*, 491 U.S. at 799). The restriction need not be the least restrictive means of furthering the government's interests. *Id.* (quoting *Ward*, 491 U.S. at 798). However, the government may not restrict speech "in such a manner that a substantial portion of the burden on speech does not serve to advance its goals." *Id.* (quoting *Ward*, 491 U.S. at 799). The restriction on speech must also "leave open ample alternative channels for communication of the information." *Ward*, 491 U.S. at 791. The government bears the burden to demonstrate that the restriction is constitutionally permissible. *Startzell v. City of Phila.*, 533 F.3d 183, 201 (3d Cir. 2008).[10]

---

[10] Although Walsh does not make the argument, we pause to explain that we are *not* applying another doctrine that would be even more deferential to the government. This doctrine holds, in some contexts, that the government has "additional authority to regulate" attorney speech. *In re Kendall*, 712 F.3d 814, 825 (3d Cir. 2013). This

**2**

Applying the time, place or manner test, we begin with the alleged governmental interest. Walsh alleges an interest in preventing the Mirabellas, litigation adversaries, from

---

additional authority is a product of the government's regulatory authority over bar admissions and attorney discipline. *See Gentile v. State Bar of Nev.*, 501 U.S. 1030, 1066 (1991).

Doctrinally, the regulation of certain attorney speech is one example of the government's additional authority to restrict speech when it "acts in capacities that go beyond being sovereign." *B.H. v. Easton Area Sch. Dist.*, 725 F.3d 293, 303 (3d Cir. 2013) (en banc) (citing *In re Kendall*, 712 F.3d at 825). That is, the law distinguishes between the government's authority to restrict speech (1) as a "sovereign" or (2) as a "property owner, educator, employer, or patron." Kathleen M. Sullivan, *The Intersection of Free Speech and the Legal Profession: Constraints on Lawyers' First Amendment Rights*, 67 Fordham L. Rev. 569, 584-85 (1998). When the government acts as a sovereign, "robust free speech protection" applies. *Id.* at 587. But when the government acts in certain other capacities, it may be "freer to place conditions" on speech. *Id.*

Walsh, we conclude, acted as a local "sovereign," not by virtue of any regulatory authority over attorneys. "When acting as sovereign, the government is empowered to impose time, place, and manner restrictions on speech . . . ." *B.H.*, 725 F.3d at 302 (citing *Ward*, 492 U.S. at 791). It is this standard that we apply.

24

communicating with Township employees per Rule 4.2 of the Pennsylvania Rules of Professional Conduct. That Rule, the commentary explains, "contributes to the proper functioning of the legal system," for three reasons: (1) it protects represented persons from "possible overreaching by other lawyers" in the matter; (2) it protects the lawyer-client relationship from interference and (3) it prevents "uncounseled disclosure[s]." Pa.R.P.C. 4.2, cmt. ¶ 1; *see also Restatement (Third) of Law Governing Lawyers*, *supra* note 7, § 99(A), cmt. ¶ b (same). These governmental interests are legitimate. *But see Restatement (Third) of Law Governing Lawyers*, *supra* note 7, § 101(A), cmt. ¶ b (suggesting that the need for a "no contact" rule is reduced where the represented person is a government entity).

As to the Mirabellas' interests, they are substantial. Construing all inferences in their favor, the Mirabellas were prohibited from contacting Township officials and employees directly, for any reason, indefinitely. This ban encompasses, *inter alia*, "normal conversation" and "one-on-one communication" with government officials—forms of expression "historically . . . closely associated with the transmission of ideas." *McCullen*, 134 S.Ct. at 2536.[11]

---

[11] Walsh's "no contact" email also substantially impairs the Mirabellas' interests in petitioning the government. Walsh prohibited the Mirabellas from "express[ing] their ideas, hopes, and concerns *to their government and their elected representatives*," as the Petition Clause guarantees. *Guarnieri*, 564 U.S. at 388 (emphasis added).

Comparing the parties' interests, the Mirabellas have alleged a burden on their speech substantially greater than necessary to protect the Township's litigation interests. "[I]t is no answer . . . to say . . . that the purpose of these regulations was merely to insure high professional standards and not to curtail free expression." *Reed v. Town of Gilbert*, 135 S.Ct. 2218, 2229 (2015) (alteration in original) (quoting *NAACP v. Button*, 371 U.S. 415, 438-39 (1963)).[12] Thus, the Mirabellas have alleged a constitutional violation of their right to petition.

## C

For the reasons above, the Mirabellas have alleged a violation of their First Amendment right to petition the government for redress of grievances. Under the second prong of qualified immunity, however, we conclude that the right was not clearly established.

As stated above, we must not "define clearly established law at a high level of generality." *al-Kidd*, 563 U.S. at 742. We therefore define the First Amendment right at issue as the right to be free from a restriction on communicating with one's government, when the plaintiff has

---

[12] Because we hold that Walsh's "no contact" email was not narrowly tailored, we need not reach the additional requirement that a time, place or manner restriction on speech leave open ample alternative channels for communication. *Ward*, 491 U.S. at 791; *see, e.g.*, *Johnson v. City & Cty. of Phila.*, 665 F.3d 486, 493 (3d Cir. 2011) (conducting this analysis).

threatened or engaged in litigation against the government. This right was not clearly established.

While other cases have held that there is a clearly established right to petition a local government, those cases did not involve litigation. For example, the Sixth Circuit has held that there is a clearly established right "to petition a local, elected representative for assistance in dealing with local government agencies." *Holzemer*, 621 F.3d at 527. Similarly, the Tenth Circuit has held that there is a clearly established right to petition a local government regarding a tax assessment. *Van Deelen*, 497 F.3d at 1159. These cases, while persuasive, do not establish that "every 'reasonable official'" in Walsh's position would have understood that his "no contact" email violated the Mirabellas' First Amendment rights. *al-Kidd*, 563 U.S. at 741 (citation omitted). Thus, Walsh is entitled to qualified immunity on the Mirabellas' Petition Clause claim.

## VI

For the reasons above, we will reverse the judgment of the District Court denying, in part, Appellant Walsh and McDonnell's motion to dismiss and we will remand with instructions to enter judgment in their favor.