**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

Nos. 16-3311 & 16-3312

FRANK NOONAN; RANDY FEATHERS;
RICHARD A. SHEETZ, JR.;
E. MARC COSTANZO; FRANK FINA

v.

KATHLEEN KANE; MICHAEL MILETTO;
CHRISTOPHER BRENNAN*; PHILADELPHIA DAILY NEWS*;
PHILADELPHIA MEDIA NETWORK (DIGITAL) LLC*;
PHILADELPHIA MEDIA NETWORK LLC*

Frank Noonan, Randy Feathers, Richard A. Sheetz, Jr., Frank Fina,
Appellants (No. 16-3311)

E. Marc Costanzo,
Appellant (No. 16-3312)

*(Dismissed pursuant to Court's Order dated 02/03/2017)

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil Action No. 2-15-cv-06082)
District Judge: Honorable Harvey Bartle, III

Argued July 10, 2017

Before: MCKEE, AMBRO, and RESTREPO, Circuit Judges

(Opinion filed:  August 9, 2017)

Mark W. Tanner        (Argued)
Feldman Shepherd Wohlgelernter Tanner & Weinstock
1845 Walnut Street, 21st Floor
Philadelphia, PA 19103

Fortunato N. Perri, Jr.
McMonagle Perri McHugh & Mischak
1845 Walnut Street
Suite 701, 19th Floor
Philadelphia, PA 19103

Peter J. Scuderi
121 South Broad Street
Suite 1400
Philadelphia, PA 19107

      *Counsel for Appellants*

Edward T. Ellis        (Argued)
Richard R. Harris
Rachel F. Satinsky
Littler Mendelson
1601 Cherry Street
Suite 1400, Three Parkway
Philadelphia, PA 19102

      *Counsel for Appellees*

———————

OPINION[*]

———————

AMBRO, <u>Circuit Judge</u>

Before us is the fallout of a public feud principally among former Pennsylvania

officials. Plaintiffs were three prosecutors in Pennsylvania's Office of Attorney General

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

(Richard A. Sheetz, Jr., E. Marc Costanzo, and Frank Fina), an investigator (Randy P. Feathers), and the Commissioner of the Pennsylvania State Police (Frank Noonan). They sue former Pennsylvania Attorney General Kathleen Kane and a current investigator in the AG's Office, Michael Miletto, for retaliating against them after exercising their First Amendment rights to speak out against Kane. The District Court dismissed their claims essentially for failing to allege that the retaliatory acts were accompanied by threats. Because Plaintiffs have adequately pled unlawful retaliatory conduct in this context, we reverse.

## I. BACKGROUND

In November 2012, Kane was elected Attorney General of Pennsylvania. During her campaign, she was highly critical of her predecessor and the Office of Attorney General for their handling of the investigation of Jerry Sandusky, the former Penn State assistant football coach who was eventually convicted of sexually abusing minors. On the campaign trail, Kane accused the AG's Office of delaying the investigation for political reasons and allocating insufficient resources to it. She pledged, if elected, to conduct her own investigation into that Office's purported mishandling of the Sandusky investigation that involved each Plaintiff. Feathers publicly challenged Kane's allegations and called her uninformed.

Once in office, Kane assumed oversight of another investigation in which Plaintiffs had been involved. It concerned elected Philadelphia public officials who were suspected of taking bribes in exchange for votes and influence. An informant, Tyron Ali, assisted investigators in exchange for the dropping of separate criminal charges against

3

him. When Kane took control of the investigation, Fina discovered that she had a conflict of interest and brought it to her attention. Kane disregarded Fina's concerns, decided to maintain control of the matter, declined to prosecute it, and refused to honor the plea agreement with Ali. Only after Fina disclosed to the supervising court Kane's conflict of interest in the investigation did she agree to drop the charges against Ali.

Following this dispute, Kane began making public accusations about the Ali bribery investigation, challenging that it lacked quality, was flawed, and was not prosecutable. She also stated that the entire investigation was racially motivated, as only members of the General Assembly's Black Caucus were targeted. Plaintiffs allege that Kane made these public accusations to damage the reputation of those involved in the investigation. They made public statements refuting Kane's accusations, and the Philadelphia District Attorney ultimately concluded that her statements were false.

Amidst this growing battle between Kane and Plaintiffs, she came across a 2009 investigation conducted in part by Fina and Costanzo. The AG's Office had been investigating J. Whyatt Mondesire, the former head of the Philadelphia chapter of the NAACP, and suspected that state grant money was improperly used to make payments to him. Due to the unavailability of witness testimony, that investigation came to a standstill. On learning of the stalled inquiry, Kane retrieved confidential grand jury documents relating to it and, through an associate of hers, transferred those materials to a reporter who wrote a story suggesting that Fina and Costanzo had obstructed or otherwise improperly terminated the investigation. Plaintiffs allege that this story was written at

Kane's instruction.[1] They also allege that Kane conspired with Co-Defendant Miletto by directing him to fabricate a story that he uncovered evidence of Mondesire's wrongdoing but that Fina and Costanzo removed him from the investigation when told of his discovery.

After learning of the release of the grand jury documents, Fina and Costanzo alerted the grand jury's supervising judge in the Mondesire investigation of the leak.[2] A separate investigation ensued, and both Fina and Costanzo testified before the grand jury. On the day they were scheduled to testify, they allege that Miletto and other agents in the AG's Office met them as they arrived, made threatening and harassing statements and attempted physically to intimidate them. Following this incident, the supervising judge imposed a protective order preventing any further attempted intimidation.

While the grand jury leak investigation was ongoing, Kane decided to make good on her campaign pledge to investigate the handling of the Sandusky investigation. Geoffrey Moulton, the attorney in the AG's Office directing the inquiry, completed his report of that investigation and, per the supervising judge's protocol, provided a copy of it to Fina, Noonan, Sheetz, and Feathers so that they would have the opportunity to respond. They did so, criticizing its findings and Kane's motives, and these responses were included in the report. Battling press conferences followed its public release. Kane

---

[1] Plaintiffs also named as defendants on this claim the reporter, Philadelphia Daily News, Philadelphia Media Network, LLC, and Philadelphia Media Network (Digital), LLC, but they were dismissed by party stipulation.

[2] The Commonwealth later indicted Kane for unlawfully disclosing grand jury materials and committing perjury before a grand jury. She was convicted of these charges in October 2016.

declared that the delay in the investigation provided Sandusky the opportunity to sexually assault other minors; Plaintiffs countered that these allegations were untrue, Kane knew they were untrue, and she was sensationalizing the series of events for the sole purpose of delivering on her campaign promises. Kane later conceded that her accusations were false.

Their public combat continued to escalate. Following Moulton's report, Kane came across a deluge of emails sent among the AG's Office officials—on government email accounts—in connection with the Sandusky investigation that were pornographic in nature and contained images of children. Plaintiffs were included on these email chains. On two separate occasions, Kane's subordinates allegedly threatened Fina's colleagues that she would release those emails in a manner damaging to Plaintiffs if they did not stop publicly criticizing her regarding the grand jury leak in the Mondesire investigation. *See* J.A. at 177 (Plaintiffs "are going to be hurt if Fina does not back off." (quotations omitted)); (Fina's colleague was instructed to warn "Fina that if [he] did not stop criticizing Kane, [she] would release the private emails of the former [AG's Office] staff."). Although Kane was advised that she could not lawfully release these emails in a selective manner and a Commonwealth court informed her that the emails were not subject to public release under Pennsylvania law, she released them nonetheless. Plaintiffs allege that she selectively released only some of the emails to paint them in a false light and depict them as the primary participants in the distribution of offensive email content. During an interview with Kane broadcast nationally, she chastised those

6

involved in the email scandal and insinuated that they disseminated child pornography via government email accounts. These insinuations were false.

Plaintiffs brought an action under 42 U.S.C. § 1983 alleging that Kane and Miletto unlawfully retaliated against them for exercising their First Amendment rights to speak out against Kane. They brought six federal counts: I) retaliation regarding accusations of Plaintiffs' racial bias in the Ali bribery investigation; II) retaliation regarding Plaintiffs' impeding the Mondesire investigation and releasing associated confidential grand jury documents; III) conspiracy to retaliate regarding the Mondesire investigation; IV) retaliation regarding Plaintiffs' delay in the Sandusky investigation and Moulton's report on it; V) retaliation regarding Plaintiffs' emails in the Sandusky investigation and insinuations that they were distributing child pornography; and VI) retaliation and casting false light on Plaintiffs in selectively releasing those emails. They also brought two state-law defamation claims.

The District Court dismissed all First Amendment retaliation claims under Federal Rule of Civil Procedure 12(b)(6) and then, declining to exercise supplemental jurisdiction over the Pennsylvania law claims, dismissed them without prejudice so that they could be brought in state court. The District Court did not reach Defendants' argument that they are entitled to qualified immunity. This appeal follows.

## II.  JURISDICTION AND STANDARD OF REVIEW

We have jurisdiction per 28 U.S.C. § 1291. We review without deference a district court's dismissal of a complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). When

conducting our review, "we must accept the allegations in the complaint as true, [but] are not compelled to accept unsupported conclusions and unwarranted inferences, or a legal conclusion couched as a factual allegation." *Morrow v. Balaski*, 719 F.3d 160, 165 (3d Cir. 2013) (en banc) (quotation omitted). "We first take note of the elements a plaintiff must plead to state a claim" and then, assuming "the veracity of well-pleaded factual allegations[,] . . . determine whether they plausibly give rise to an entitlement to relief." *Saliba v. Att'y Gen. of United States*, 828 F.3d 182, 188-89 (3d Cir. 2016) (quotations omitted).

## III. ANALYSIS

### A. First Amendment Claims

"In order to plead a retaliation claim under the First Amendment, a plaintiff must allege: (1) constitutionally protected conduct, (2) retaliatory action sufficient to deter a person of ordinary firmness from exercising his constitutional rights, and (3) a causal link between the constitutionally protected conduct and the retaliatory action." *Thomas v. Independence Twp.*, 463 F.3d 285, 296 (3d Cir. 2006) (citation omitted). It "is a fact intensive inquiry focusing on the status of the speaker, the status of the retaliator, the relationship between the speaker and retaliator, and the nature of the retaliatory acts." *Brennan v. Norton*, 350 F.3d 399, 419 (3d Cir. 2003) (quotation and emphases omitted). [3]

---

[3] In their briefing, Kane and Miletto suggest that Plaintiffs were never employees for the purpose of their First Amendment retaliation claims and thus a different legal analysis would apply. Appellees' Br. at 20. Not only do they concede that Plaintiffs might have been employees under Kane, *see, e.g., id.* at 27 (Plaintiffs "left the [AG's Office] shortly before or after [Kane's] inauguration"), and cite to First Amendment retaliation cases in which the plaintiff was an employee, the District Court expressly

8

The "key question" is the second element—whether the action would sufficiently deter the exercise of constitutional rights. *McKee v. Hart*, 436 F.3d 165, 170 (3d Cir. 2006). An official's retaliatory action "need not be great in order to be actionable," but it must be more than *de minimus*. *Suppan v. Dadonna*, 203 F.3d 228, 235 (3d Cir. 2000) (quotation omitted). "On the other hand, . . . where the [official's] alleged retaliatory acts were criticism, false accusations, or verbal reprimands," a First Amendment retaliation claim typically does not exist. *Brennan*, 350 F.3d at 419 (quotation omitted).

As the District Court observed and the parties agree, Plaintiffs have satisfied the first and last elements of their retaliation claims—Plaintiffs were engaged in conduct protected by the First Amendment and there is a causal link between that conduct and the alleged retaliatory action. Kane and Miletto argue, however, that Plaintiffs have not sufficiently claimed any retaliatory action that would deter a person of ordinary firmness from engaging in the protected conduct. The District Court agreed, finding that Plaintiffs had not met this required element because they did not allege any threats or intimidation. We disagree.

The District Court correctly determined that "where a public official's alleged retaliation is in the nature of speech, in the absence of a threat, coercion, or intimidation intimating that punishment, sanction, or adverse regulatory action will immediately follow, such speech does not adversely affect a citizen's First Amendment rights, even if

declined to make such a finding given Plaintiffs' pleadings, J.A. at 48. Our reading of paragraphs 35 through 61 of the Complaint is that Costanzo likely left the AG's Office prior to Kane's inauguration, and the employee status of the remaining Plaintiffs remains ambiguous. This is fact-finding that the District Court should make in the first instance.

9

defamatory." J.A. at 64 (quoting *Suarez Corp. Indus. v. McGraw*, 202 F.3d 676, 687 (4th Cir. 2000)). This is so because, "when a public official's allegedly retaliatory acts are in the form of speech, the official's own First Amendment speech rights are implicated." *Zaloga v. Borough of Moosic*, 841 F.3d 170, 176 (3d Cir. 2016) (quotations omitted). Because each party has a First Amendment interest in those circumstances, "we employ a more specific test to determine whether the official's speech amounts to a retaliatory act"—that outlined in *Suarez*. *Mirabella v. Villard*, 853 F.3d 641, 651 (3d Cir. 2017). As noted, normally "an [official's] actions have [not] adversely affected [the] exercise of [] First Amendment rights where the [] alleged retaliatory acts were criticism, false accusations, or verbal reprimands." *McKee*, 436 F.3d at 170 (quoting *Brennan*, 350 F.3d at 419 (quotation omitted)). However, a retaliation claim involving a government official's own speech must involve a "threat, coercion, or intimidation" by the official that a punishment will follow from the continued exercise of a plaintiff's First Amendment rights. *Mirabella*, 853 F.3d at 651 (quotation omitted). *See also Koren v. Noonan*, 586 F. App'x 885, 888 (3d Cir. 2014); *Mun. Revenue Servs., Inc. v. McBlain*, 347 F. App'x 817, 825 (3d Cir. 2009).

With this understanding—that to survive a motion to dismiss Plaintiffs must allege retaliation by Defendants accompanied by coercion, threats, or intimidation—they have sufficiently pled as much in their first amended complaint. They assert at least three specific instances in which Defendants (or associates at their direction) threatened them. Fina alleges that his colleague was told by Kane's deputy that "if Fina did not stop criticizing Kane, [she] would release the private emails of the former [AG's Office]

10

staff." J.A. at 177. In another encounter between Fina's colleague and Kane's subordinate, Fina alleges that Kane's staff threatened that "a lot of [Fina's] people are going to be hurt if 'Fina does not back off.'" *Id.* Although the District Court did not believe Plaintiffs alleged that these threats came directly from Kane, they do in fact make such an allegation. *Id.* at 175; *see also id.* at 222 ("Each of the Plaintiffs was subject to direct attempts of intimidation and blackmail by the Defendant Kane, as she threatened that if the Plaintiffs continued to be publicly critical of her, she would selectively release damaging and embarrassing information in an attempt to humiliate and impugn them."). Finally, Plaintiffs allege that Miletto physically threatened and intimidated them at the courthouse where they were about to testify against him regarding the grand jury leak, which lead to the court issuing a protective order against him. *Id.* at 172. These constitute threats of adverse action or punishment that would follow if Plaintiffs continued to exercise their First Amendment right to speak out against Kane. [4]

No doubt facts found in discovery will make or break Plaintiffs' case. But at the motion-to-dismiss stage they have alleged a colorable claim of retaliation in violation of their First Amendment rights. Whether that retaliation would deter a person of ordinary firmness from exercising those rights is a question to be decided by the factfinder and not discarded so early. Accordingly, we reverse.

---

[4] In passing, Plaintiffs assert that we must apply an objective standard to their claims, presumably because their allegations indicate that they were not in fact chilled from exercising their First Amendment rights and continued to make public statements against Kane following the alleged threats made in attempt to silence them. Plaintiffs are correct that an objective standard is applied and that they need not allege actual deterrence to state a First Amendment retaliation claim. *See Mirabella*, 853 F.3d at 650.

11

## B.  Qualified Immunity

Defendants ask us to grant them qualified immunity should we find that Plaintiffs allege an actionable First Amendment retaliation claim.  In response, Plaintiffs argue that Defendants are not entitled to qualified immunity when they knowingly violate the law, as they acted deliberately to retaliate against Plaintiffs and committed unlawful acts in doing so (such as releasing confidential grand jury documents).  Moreover, Plaintiffs point out that Kane had two legal opinions advising her of the illegality of releasing Plaintiffs' emails, and Kane herself actively challenged the release of them in court when requested by journalists under Pennsylvania law.  Because the District Court did not reach Defendants' arguments that they are entitled to qualified immunity, it is premature to consider it in the first instance.

*     *     *     *     *

Plaintiffs have sufficiently pled claims of retaliation against government officials in violation of their First Amendment rights.  Thus we reverse and remand so that they can proceed to discovery.