NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 20-3229
_____

JOHN MCGEE,
Appellant

v.

TOWNSHIP OF CONYNGHAM;
CONYNGHAM TOWNSHIP BOARD OF SUPERVISORS;
CONYNGHAM TOWNSHIP AUTHORITY;
SUPERVISOR LINDA TARLECKI, Individually and as Supervisor;
SUPERVISOR TODD CROKER, Individually and as Supervisor;
SUPERVISOR JOSEPH SHRINER, Individually and as Supervisor
_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. No. 4-17-cv-1639)
District Judge:  Honorable Joseph F. Saporito, Jr.
_____

Submitted Under Third Circuit LAR 34.1(a)
September 20, 2021

Before:   JORDAN, PORTER, and RENDELL, *Circuit Judges*

(Filed: September 23, 2021)
_____

OPINION*
_____

---

* This disposition is not an opinion of the full court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

JORDAN, *Circuit Judge*.

John McGee became suspicious that a Conyngham Township Supervisor was syphoning government money into her own pockets, so he requested information from the Township under Pennsylvania's Right-to-Know Law. Upset by his requests, the Supervisor in turn sent McGee a similar request in the name of the Township, seeking his personal business records. Her request was unenforceable under Pennsylvania law, and McGee ignored it, but he believed it was meant to silence him. He thus sued the Township and three Supervisors for retaliation in violation of the First Amendment and for depriving him of substantive due process in violation of the Fifth and Fourteenth Amendments. The District Court granted summary judgment on those claims in favor of the defendants. We will affirm in part and vacate and remand in part.

## I.    BACKGROUND

McGee is a businessman and landlord who has lived in the Township of Conyngham, Pennsylvania since 2002. In 2015, he became involved in Township politics, attending occasional meetings of the Board of Supervisors and speaking up about his concerns with the Township's housing code. In February of 2017, he grew suspicious of the Township's finances and submitted a Pennsylvania "Right-to-Know Request Form" to the Board, seeking, among other things, time records, payment records, daily schedules, and expense reimbursements made to the Township's Secretary and

Supervisor, Linda Tarlecki.[1]  Tarlecki had been the Township's Secretary since 2006, prior to becoming a Supervisor.  She was responsible for responding to Right-to-Know requests directed to the Township, and she provided McGee a partial response.  Later, McGee sent a second request, again seeking Tarlecki's payroll and reimbursement information.  McGee had also been asking questions about such records at Township meetings.

After receiving the second request, the Township sent a Right-To-Know request to McGee, seeking tax records for his businesses and receipts for repairs done to his rental properties.  Tarlecki testified that she prepared and handed the request to McGee because she "got tired of getting a Right to Know off of him every time I was out of the office." (App. at 102.)  She did not, however, "expect the [requested] documents to come back." (App. at 101.)  The named requesters on the form were "Conyngham Township Authority and Conyngham Township."  (App. at 46.)

When McGee received the Township's request, he did not respond, retain a lawyer, or contact the Township Board of Supervisors.  And he had previously written the Township a letter in which he noted his understanding that the Right-to-Know Law allows taxpayers to request information pertaining to the operations of municipalities and state agencies.  He now asserts, however, that he was not aware that the request for information could not be enforced against him, as an individual.  Later, at a Township

---

[1] A Right-to-Know request can be made in Pennsylvania under the 2008 Pennsylvania Right-to-Know Law.  That Law provides for public access to state government information.  65 Pa. Stat. Ann. § 67.101, *et seq.*

meeting, he asked the Supervisors why they wanted his personal and business information and they refused to explain. A reporter who had written critical articles about the Township Board also received a request from Tarlecki seeking information on the reporter's meetings with McGee.

Things soon broke McGee's way politically, and his suspicions of Tarlecki turned out to be justified. McGee was elected to the Board as a write-in candidate and Tarlecki was voted out in November 2017. After that, state police investigated Tarlecki and determined that she had stolen more than $180,000 from the Township. She was charged with various crimes.

Shortly before the election, however, McGee had sued the Township and its then-Supervisors under 42 U.S.C. § 1983 for violating his rights under the First, Fifth, and Fourteenth Amendments.[2] He also brought claims for defamation and intentional infliction of emotional distress. The District Court granted summary judgment for the Township and the Supervisors on McGee's § 1983 claims and his claim for intentional infliction of emotional distress. The Court also granted summary judgment for the Township, but not the Supervisors, on McGee's claim for defamation. Later, however, the Supervisors won on that claim at trial. McGee appeals only the summary judgment ruling with respect to his § 1983 claims.

---

[2] Under 42 U.S.C. § 1983, individuals have a claim for money damages against a state actor that "depriv[es] [them] of any rights, privileges, or immunities secured by the Constitution."

4

**II.    DISCUSSION**[3]

McGee clearly failed to support a due process claim, but his First Amendment claim has more merit.  We consider each of those two claims in turn.

A.    Due Process Claim

To make out a substantive due process claim under the Fifth and Fourteenth Amendments, McGee had to show that he experienced a "depriv[ation] … of life, liberty, or property[.]"  U.S. Const. amend. XIV, § 1; *see Daniels v. Williams*, 474 U.S. 327, 331 (1986) ("Historically, this guarantee of due process has been applied to deliberate decisions of government officials to deprive a person of life, liberty, or property." (emphasis omitted)).  He failed to do that.  Indeed, he did not experience a loss of any kind.  He argues that the Board's Right-to-Know request "cause[d] alarm" because he "did not know it was meaningless."  (Opening Br. at 20.)  Experiencing momentary alarm, however, is not a constitutionally cognizable deprivation.  As the District Court put it, McGee "has not identified a protected property interest that Defendants infringed." (App. at 21-22.)  Summary judgment was thus properly entered against him on his substantive due process claim.

---

[3] We have jurisdiction to review the District Court's opinion under 28 U.S.C. § 1291.  The District Court had jurisdiction under 28 U.S.C. §§ 1331 and 1367.  "We exercise plenary review over the grant or denial of summary judgment and apply the same standard" applicable in the district court. *Minarsky v. Susquehanna County*, 895 F.3d 303, 309 (3d Cir. 2018).  Summary judgment is appropriate when, drawing all reasonable inferences in favor of the nonmoving party, "the movant shows that there is no genuine dispute as to any material fact," and thus the movant "is entitled to judgment as a matter of law." *Thomas v. Cumberland County*, 749 F.3d 217, 222 (3d Cir. 2014) (quoting Fed. R. Civ. P. 56(a)).

B.    First Amendment Claim

In order to prevail on a retaliation claim under the First Amendment, "a plaintiff must … [prove]: (1) constitutionally protected conduct, (2) retaliatory action sufficient to deter a person of ordinary firmness from exercising his constitutional rights, and (3) a causal link between the constitutionally protected conduct and the retaliatory action." *Thomas v. Indep. Twp.*, 463 F.3d 285, 296 (3d Cir. 2006).  There does not appear to be any dispute that McGee engaged in constitutionally protected speech, nor that there was evidence of a causal link between his speech and the Right-to-Know request Tarlecki gave him.  The point of contention here is on the second of the three elements of the claim, namely, whether McGee adduced enough evidence to allow a rational jury to find that a "person of ordinary firmness" would have been deterred from criticizing the Township Board after receiving the Right-to-Know request that Tarlecki handed him. While the question is a close one, we are, when reviewing summary judgment, required to view the facts in the light most favorable to the non-moving party, McGee.  *Tolan v. Cotton*, 572 U.S. 650, 651 (2014) (It is an "axiom" that, "in ruling on a motion for summary judgment, '[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor.'" (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986))).  Viewed through that prism, we conclude McGee came forward with enough evidence to withstand summary judgment.

In evaluating that second element, we have "required that the nature of the retaliatory acts … be more than *de minimis* or trivial[,]" meaning more than "criticism, false accusations, or verbal reprimands."  *Brennan v. Norton*, 350 F.3d 399, 419 (3d Cir.

6

2003) (citation omitted).  At the same time, however, we have also emphasized that "the threshold" for establishing the second element "is 'very low.'"  *Baloga v. Pittston Area Sch. Dist.*, 927 F.3d 742, 758 (3d Cir. 2019) (quoting *O'Connor v. City of Newark*, 440 F.3d 125, 128 (3d Cir. 2006)).  "[W]hether an act is retaliatory is an objective question," and we do not ask "whether the plaintiff [himself] was deterred."  *Mirabella v. Villard*, 853 F.3d 641, 650 (3d Cir. 2017).

In this instance, while it is true that Tarlecki had no legal grounds for giving McGee a request for his business information,[4] she never acknowledged the lawlessness of her action, even after McGee inquired about the Right-to-Know request at a Township meeting.  Instead, she brushed aside McGee's inquiry with the strange assertion that it was "none of his business" why she had delivered the Right-to-Know request.  (App. at 104.)  And the record does not reveal that anybody else suggested to McGee that the Right-to-Know request could be ignored.

Nor does the document itself give any hint of that.  The header on the request says that it is from the "Pennsylvania Office of Open Records" and is a "Standard Right-To-Know Request Form."  (App. at 46.)  The request came in the name of the "Conyngham Township Authority and Conyngham Township" (App. at 46), and the language of the document indicates that its recipient has been given an official and serious demand for information, as authorized by state law.

---

[4] Pennsylvania's Right-to-Know Law only binds "[c]ommonwealth agencies, local agencies, legislative agencies, and judicial agencies," *Bowling v. Off. of Open Recs.*, 75 A.3d 453, 457 (Pa. 2013), and so has no legal force against private citizens.

7

Moreover, the manner in which Tarlecki framed the Right-to-Know request and the information that she requested were designed to grab an ordinary person's attention. Whereas McGee's requests to the Township were made in his individual capacity, the request made back to him was addressed to him in his capacity as president of Center State Properties Inc. and MAK Property Management Inc. It focused on his business activity and thus targeted his livelihood. When ordinary people without legal training receive a demand from a government agency to produce tax returns and evidence justifying their business activities, a natural reaction is some degree of apprehension and defensiveness. Such concern is sensible because the transaction costs of dealing with a government investigation are never zero. Even if one is unsure about his rights and obligations, he may well suspect that an investigatory demand is implicitly backed by the threat of further investigation, penalty, or legal process.

That kind of threat seems to be precisely what Tarlecki meant to convey (App. at 74-75), to stop McGee from digging into the Township's use of taxpayer resources. A reasonable jury could conclude that she wanted McGee to think twice about saying or doing anything that might displease Township officials. A threat like that might be particularly potent against someone like McGee, whose rental business in all probability requires permits, inspections, and other interactions with the local government. *See Brennan*, 350 F.3d at 419 (explaining that we "focus[] on the status of the speaker, the status of the retaliator, the relationship between the speaker and the retaliator, *and the nature of the retaliatory acts*."). Viewed in the light most favorable to McGee, the evidence here would allow a jury to decide that Tarlecki's "retaliatory action [would be]

8

sufficient to deter a person of ordinary firmness from exercising his constitutional rights." *Thomas*, 463 F.3d at 296. Accordingly, summary judgment on the First Amendment retaliation claim should not have been entered against McGee.

## III.    CONCLUSION

For the foregoing reasons, we will affirm the District Court's summary judgment ruling as to McGee's substantive due process claim but will vacate summary judgment as to the First Amendment claim and will remand for further proceedings.