Filed 3/6/24  Sattley v. Mirisch CA2/2

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| JOSH SATTLEY et al., | B325969 |
| Plaintiffs and Appellants, | (Los Angeles County Super. Ct. No. 21STCV45066) |
| v. | |
| JOHN MIRISCH, | |
| Defendant and Respondent. | |

APPEAL from orders of the Superior Court of Los Angeles County, Barbara M. Scheper, Judge.  Affirmed.

JW Howard/Attorneys, John W. Howard and Scott J. Street for Plaintiffs and Appellants.

Richards, Watson & Gershon, Jennifer Petrusis, Ginetta L. Giovinco and Garen N. Bostanian for Defendant and Respondent.

Josh Sattley and Ettore Berardinelli, Jr., (collectively appellants) sued Muntu Davis, an individual acting in his official capacity as the Health Officer of Los Angeles County; the County of Los Angeles; the City of Beverly Hills (City); and John Mirisch (respondent).[1] Appellants' complaint against these individuals and entities involved events surrounding appellants' requests for exemption from Los Angeles County's 2021 vaccine mandate, which required healthcare workers, including paramedics and emergency workers, to get the COVID-19 vaccine. Respondent was sued in his individual capacity but was acting as a member of the city council during the relevant time.

Appellants appeal from an order sustaining respondent's demurrers to their third and fourth causes of action against respondent for violation of title 42 United States Code section 1983 and Civil Code section 52.1 (section 52.1 or the Bane Act), respectively. Appellants also challenge the trial court's order granting respondent's special motion to strike the same causes of action pursuant to Code of Civil Procedure section 425.16 (section 425.16 or "anti-SLAPP" statute) and resulting order that appellants pay respondent nearly $13,000 in legal fees.

We affirm the orders.

### FACTUAL BACKGROUND

Appellants' complaint contains the following allegations: On August 12, 2021, Davis, the Health Officer of the County of Los Angeles, issued an order requiring certain healthcare workers to get a COVID-19 vaccination by September 30, 2021. The order provided for exemptions based on religious beliefs or qualifying medical reasons. The City required its firefighters to

---

[1]     Mirisch is the sole respondent in this appeal.

2

ask for an exemption and then required those who asked for an exemption to submit to an interview to justify his or her objections.

On September 30, 2021, the final day to comply with the health order, respondent posted a statement on Twitter that was then published in the Beverly Hills Courier. The text of the statement was attached as exhibit B to appellants' complaint.[2] The statement reads, in full:

"One month ago I sent the Beverly Hills Firefighters Association (BHFA) a letter expressing my surprise and disappointment that the union asked for the City Council's help in allowing their members to circumvent the County's vaccine mandate.

"I wrote: 'Vaccine mandates are legal and they serve to protect both the employees and our Community members. While employees can make decisions for themselves, they cannot and should not be allowed to make a decision which would unnecessarily expose a Community member to Covid-19 as a matter of both policy and ethics.'

"While the Council rejected the BHFA's overtures and was and is unwilling to help the firefighters get around the County mandate, it seems that a large number of anti-vaxxer Beverly Hills firefighters are trying to take things into their own hands.

---

[2] "'Where written documents are the foundation of an action and are attached to the complaint and incorporated therein by reference, they become a part of the complaint and may be considered on demurrer.'" (*Qualcomm, Inc. v. Certain Underwriters at Lloyd's, London* (2008) 161 Cal.App.4th 184, 191.)

"This morning we received word from our Chief that 25 firefighters—close to 30% of the entire force—have submitted exemption requests to the City's Human Relations department. Two of the applications cited medical exemptions, while 23 of the firefighters want to be granted 'religious exemptions' from the vaccination mandate.

"This seems to be nothing short of an attempt to manipulate the system on a massive scale. Religious exemptions are meant for deeply held and sincere religious convictions[;] they are not hall passes for those who don't want to take the vaccine, however strong those feelings are or whatever conspiracy theories they may believe.

"As I stated in my Aug. 30 letter, I felt the BHFA's request for the Council's complicity in avoiding the vaccination requirement was both surprising and disappointing. If any of the firefighters who applied for exemptions on an unprecedented scale are gaming the system[—]and it seems highly likely that many, if not most of them are—[it] is nothing short of outrageous.

"The firefighters applying for an exemption will be interviewed under penalty of perjury to ascertain whether their refusal to get vaccinated is medically necessary or rises to the level of a bona fide religious conviction. That they would go to such an extent to avoid taking an action which protects our entire Community is bad enough, if any of them are caught perjuring themselves in their attempt to circumvent the vaccination mandate, then there should be serious consequences.

"In many police departments, there is a well-known axiom: 'You lie, you die.'

"The average total compensation of a Beverly Hills firefighter is $[illegible] annually. Our firefighters are not only paid extremely well, they have also always been treated

4

extremely well by our entire Community.  It is so terribly sad that some 30% of them are unwilling to reciprocate their treatment by taking the safe, sane and simple measure of getting a Covid-19 vaccination to protect the Community, not to mention themselves and the other employees.

"It feels like a sacred trust has been broken.  From my perspective any firefighter caught lying under oath trying to avoid this protective measure should be terminated for cause, as beyond showing a willingness to expose our Community to unnecessary risk, they would be unfit in my eyes to represent Beverly Hills.

"John Mirisch

"Beverly Hills City Councilmember"

At the time of respondent's statement, appellants were firefighters for the City, and subject to the health order.  Both requested religious exemptions.

Berardinelli's interview in connection with his request for religious exemption took place on September 29, 2021.  Berardinelli received a temporary religious exemption.  However, while extending his religious exemption, he was moved to a different job that receives fewer calls.  He was also not allowed to respond to certain calls.  He has claimed to have been discriminated against because of his religious views and thus deprived of opportunities to advance his career.

Sattley's interview in connection with his request for a religious exemption took place on September 28, 2021.  The City denied Sattley a religious exemption.  Sattley did not get the vaccination and was placed on unpaid leave effective October 1, 2021.  Sattley was ultimately terminated.

Sattley received right-to-sue letters from state and federal regulators and thus exhausted the administrative process.

5

## PROCEDURAL HISTORY

### The complaints

Appellants filed their case in December 2021. After dismissing the county defendants, the trial court allowed appellants to file the operative second amended complaint (SAC) in August 2022, which alleged claims only against the City and respondent. The SAC alleged 11 causes of action. Only the third and fourth causes of action, alleged against respondent, are at issue in this appeal.

Appellants' third cause of action alleged a violation of title 42 United States Code section 1983, First Amendment retaliation.[3] Specifically, appellants alleged that respondent "retaliated" against appellants when "he publicly accused them and other city employees who asserted a religious objection to vaccination of lying and of being 'anti-vaxxers' who wanted to circumvent the County Health Mandate." Appellants alleged that in his official capacity, respondent acted "with the specific intent to coerce" them "into violating their conscience and getting the Covid shot to save their jobs." Appellants characterized respondent's speech as "threats," and alleged that "a government official's threat of invoking legal sanctions . . . can violate the First Amendment, even if done through speech." Appellants also alleged that an individual of ordinary firmness would be chilled from exercising his First Amendment rights when accused of

---

[3] Title 42 United States Code section 1983 provides, in part, that "[e]very person who, . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . ."

lying and threatened with prosecution by a government official such as respondent.

Appellants' fourth cause of action against respondent alleged a violation of section 52.1.[4]  Appellants alleged that respondent intentionally interfered with, or attempted to interfere with, their civil rights by threats, intimidation, or coercion, including by publicly accusing them and other city employees of lying and of being "anti-vaxxers" who would be prosecuted if they continued asserting a religious objection to the COVID-19 vaccination under oath.  Appellants claimed respondent's comments led them to reasonably believe they would be fired or prosecuted if they continued to assert religious objections.  Appellants alleged "[respondent's] comments violated the Bane Act as they constituted a nonviolent threat with severe consequences that [respondent] intended to deter the Individual Plaintiffs from asserting their constitutional and statutory rights."

**Respondent's demurrer and anti-SLAPP motion**

Respondent filed both a demurrer and an anti-SLAPP motion to dismiss challenging the third and fourth causes of action in appellants' SAC, which we review individually, as they have separate and distinct requirements and result in different remedies.

---

[4]  Section 52.1 provides, in part, that an individual may bring a suit for damages against any person who "interferes by threat, intimidation, or coercion, or attempts to interfere by threat, intimidation, or coercion, with the exercise or enjoyment by any individual or individuals of the rights secured by the Constitution or laws of the United States, or of rights secured by the Constitution or laws of this state."  (§ 52.1, subds. (b); see *id.*, subd.(c).)

7

The September 26, 2022 demurrer argued the third and fourth causes of action should be dismissed for failure to state a claim. As to the third cause of action for First Amendment retaliation, respondent asserted that respondent's speech alone could not constitute a threat, that perjury is not protected speech, and that Berardinelli could not plead damages. As to the fourth cause of action for violation of the Bane Act, respondent argued he did not threaten appellants, but only firefighters who perjured themselves. In addition, he argued his speech alone was insufficient to support a Bane Act cause of action because it was not violent and did not threaten violence.

In the October 7, 2022 anti-SLAPP motion, respondent claimed his comments regarding the vaccine requirement for healthcare workers constituted free speech concerning an issue of public interest. Respondent also claimed appellants did not have a probability of prevailing on their claims, as his speech did not constitute a threat against appellants or an adverse employment action. He further contended lying is not protected speech, and Berardinelli could not prove he suffered damages.

As to the Bane Act claim, respondent argued appellants could not prevail because respondent did not threaten them, but only stated there should be serious consequences for firefighters who perjured themselves in an attempt to circumvent the vaccination requirement. Further, respondent argued that speech itself is insufficient to support a Bane Act cause of action unless the speech threatens violence against a specific person or group of persons, and such person or group of persons reasonably believes violence will be committed against them or their property. Respondent asserted that appellants' fourth cause of action did not come close to alleging the facts necessary for a

8

cause of action under the Bane Act.  Respondent sought fees and costs pursuant to section 425.16, subdivision (c).

**Trial court rulings**

The trial court sustained the demurrer and granted the anti-SLAPP motion.

In ruling on the demurrer, the trial court found respondent's statements were insufficient as a matter of law to state a claim for First Amendment retaliation, emphasizing that respondent "stated that 'if' a firefighter perjured themselves, they should face 'serious consequences.'"  The court stated, "Committing perjury is not protected conduct, and the statement that one who commits perjury should face consequences does not constitute a threat of legal sanctions that would support a claim for First Amendment retaliation."  Further, allowing a First Amendment retaliation claim based on respondent's comments would ignore the competing First Amendment rights of respondent as a public official.  Respondent's motion to dismiss the two causes of action was granted.  The October 21, 2022 ruling was stayed until November 17, 2022, the date of the hearing on the anti-SLAPP motion.

At the November 17, 2022 hearing the trial court granted respondent's anti-SLAPP motion and struck the third and fourth causes of action in the SAC pursuant to section 425.16.  As to the first prong of the required test, the court found respondent's statements were protected as the speech of a public official on a matter of public concern.  The court specified that respondent's statements were "directly concerned with the implementation of the vaccine mandate and the related religious exemption process, clear matters of public interest."

The court further found appellants failed to demonstrate a probability of prevailing on the two causes of action.  As to the

First Amendment retaliation claim, the court found respondent's comments would not chill a person of ordinary firmness from future First Amendment activities. Respondent did not make a threat "intimating that punishment, sanction, or adverse regulatory action will imminently follow." Furthermore, allowing a First Amendment retaliation claim would ignore respondent's competing First Amendment rights as a public official. As to the cause of action for Bane Act violation, the court found appellants had failed to demonstrate a probability of prevailing because they did not allege respondent "made any threat of violence against any person or group of people."

The court found respondent was entitled to his attorney fees pursuant to section 425.16, subdivision (c)(1), and ordered appellants to pay respondent's attorney fees and costs in the amount of $12,958.65.

The October 21, 2022 order staying the earlier rulings was then lifted.

**Notice of appeal**

On December 20, 2022, appellants filed their notice of appeal from the orders sustaining the demurrer and granting the anti-SLAPP motion.

## DISCUSSION

### I. Demurrer

#### A. *Legal standards*

We apply de novo review to an order sustaining a demurrer. (*SI 59 LLC v. Variel Warner Ventures, LLC* (2018) 29 Cal.App.5th 146, 152.) We exercise our independent judgment to determine whether, as a matter of law, the complaint states a cause of action on any legal theory. (*Ortega v. Contra Costa Community College Dist.* (2007) 156 Cal.App.4th 1073, 1080.) In

10

doing so, we "must assume the truth of the complaint's properly pleaded or implied factual allegations." (*Schifando v. City of Los Angeles* (2003) 31 Cal.4th 1074, 1081 (*Schifando*).) We must also consider judicially noticed matters. (*Ibid.*)

"If the trial court sustained the demurrer without leave to amend, as here, we must decide whether there is a reasonable possibility the plaintiff could cure the defect with an amendment." (*Schifando, supra*, 31 Cal.4th at p. 1081.) Appellants' request for leave to amend is reviewed for abuse of discretion. (*Ibid.*) Appellants bear the burden of proving that an amendment would cure the defect. (*Ibid.*)

## B. *Third cause of action for First Amendment retaliation*

### 1. *Applicable law*

"A plaintiff may bring a Section 1983 claim alleging that public officials, acting in their official capacity, took action with the intent to retaliate against, obstruct, or chill the plaintiff's First Amendment rights." (*Arizona Students' Assn. v. Arizona Board of Regents* (9th Cir. 2016) 824 F.3d 858, 867.) "To bring a First Amendment retaliation claim, the plaintiff must allege that (1) it engaged in constitutionally protected activity; (2) the defendant's actions would 'chill a person of ordinary firmness' from continuing to engage in the protected activity; and (3) the protected activity was a substantial motivating factor in the defendant's conduct—i.e., that there was a nexus between the defendant's actions and an intent to chill speech." (*Ibid.*) To prevail, a plaintiff must show "that the defendant 'intended to interfere' with the plaintiff's First Amendment rights and that it suffered injury as a result." (*Ibid.*)

"'Retaliation claims involving government speech warrant a cautious approach by courts,' because '[r]estricting the ability of

11

government decisionmakers to engage in speech risks interfering with their ability to effectively perform their duties' and 'ignores the competing First Amendment rights of the officials themselves.'" (*Greisen v. Hanken* (9th Cir. 2019) 925 F.3d 1097, 1113 (*Greisen*).) A "'balance must be struck between the citizen's right to exercise his First Amendment rights and the public official's personal First Amendment rights, as well as his duty to the public to speak out about matters of public concern.'" (*Ibid.*) Thus, courts have rejected retaliation claims based exclusively on retaliatory speech, noting that "'[i]t would be the height of irony, indeed, if mere speech, in response to speech, could constitute a First Amendment violation.'" (*Ibid.*) "Not only do public officials have free speech rights, but they also have an obligation to speak out about matters of public concern." (*Goldstein v. Galvin* (1st Cir. 2013) 719 F.3d 16, 30.)

Retaliatory government speech may serve as a basis for liability for a First Amendment retaliation claim under two circumstances. First, retaliatory speech may form the basis of a First Amendment retaliation claim "when that speech is part of a campaign of harassment designed to burden the plaintiff's protected expression." (*Greisen, supra*, 925 F.3d at pp. 1113-1114.) In *Allen v. Scribner* (9th Cir. 1987) 812 F.2d 426, 429, for example, the plaintiff alleged that the defendants, who were officials of the California Department of Food and Agriculture and the United States Department of Agriculture, intimidated him, threatened him, harassed him and "made defamatory statements to the media with the intent of discrediting him."

Second, "even when it is not part of a campaign of harassment designed to burden the plaintiff's protected expression, retaliatory speech may serve as the basis for a First Amendment retaliation claim when it 'intimat[es] that some form

12

of punishment or adverse regulatory action would follow.'"
(*Greisen, supra*, 925 F.3d at p. 1114.)

### 2. *Appellants have failed to state a claim*

As to the first element of this cause of action, appellants alleged that in seeking reasonable accommodations under the City's vaccine policy, they were exercising their First Amendment right to religious freedom and their right to seek accommodation from their employer for their religious practices. Respondent does not contest the general proposition that an individual's decision to seek religious accommodations is a constitutionally protected activity.

Nevertheless, appellants have failed to meet the second element of their cause of action for First Amendment retaliation. Specifically, the speech of public officials may only form the basis of a First Amendment retaliation claim if "when that speech is part of a campaign of harassment designed to burden the plaintiff's protected expression" or "'intimat[es] that some form of punishment or adverse regulatory action would follow'" if appellants continued to engage in the protected activity. (*Greisen, supra*, 925 F.3d at pp. 1113-1114.)

No allegations of either situation were made here. Appellants do not allege that respondent engaged in a campaign of harassment against them; instead their allegations are centered around a single speech. While appellants assert respondent's comments were made as part of a campaign of harassment, they fail to cite to portions of the SAC showing such a campaign.[5] Despite the position appellants take on appeal, the allegations do not exist in the SAC.

---

[5] Appellants cite to pages 115-116 and 121 of the Appellants' Appendix (or pages 6-7 and page 12 of the SAC), which contain no

13

Further, the speech itself shows that respondent did not suggest some form of punishment or adverse action would arise from protected activity. Instead, respondent directed his comments to those firefighters who might be "gaming the system." Respondent confirmed the importance of constitutional rights, stating, "Religious exemptions are meant for deeply held and sincere religious convictions." Respondent directed no threatening words toward anyone holding such sincere religious convictions, but towards those who might lie, stating: "if any of them are caught perjuring themselves in their attempt to circumvent the vaccination mandate, then there should be serious consequences" and "[f]rom my perspective any firefighter caught lying under oath trying to avoid this protective measure should be terminated for cause . . . ." Respondent's "[y]ou lie, you die" quote was also directed at individuals being dishonest, not individuals exercising a protected right to express their religious freedom through an exemption. Committing perjury is not a protected activity. (See *United States v. Alvarez* (2012) 567 U.S. 709, 720 ["It is not simply because perjured statements are false that they lack First Amendment protection. Perjured testimony 'is at war with justice' because it can cause a court to render a 'judgment not resting on truth.'"].)

The cases cited by appellants on this point are distinguishable because they involve threats seeking to chill protected conduct. In *Watison v. Carter* (9th Cir. 2012) 668 F.3d

_____

allegations of a campaign of harassment. In a footnote appellants observe that Sattley has obtained "even more evidence" of respondent's campaign of harassment against him. Yet there is no citation to any such evidence. We therefore disregard this statement.

14

1108, 1114-1115 (*Watison*), the appellant alleged he was retaliated against for the filing of an inmate grievance, which is protected conduct. In *Schleig v. Borough of Nazareth* (3d Cir. 2017) 695 Fed.Appx. 26, 27 (*Schleig*), an unpublished case, a police officer stated a claim for First Amendment retaliation against a fellow police officer who threatened him with "termination, physical violence, and even death, in retaliation for Schleig's active involvement in a police union." "Speech that is critical of unlawful labor practices qualifies as speech on matters of public concern" (*ibid.*), and "'activities on behalf of a union faction that necessarily entail a substantial criticism of management raise matters of public concern'" (*ibid.,* quoting *Clue v. Johnson* (2d Cir. 1999) 179 F.3d 57, 61). Thus, as in *Watison*, the threats in *Schleig* involved protected conduct, not perjury.

Appellants argue that even implied threats of harm are sufficient to state a First Amendment retaliation claim, citing foreign federal District Court cases to support this claim, which are unpersuasive. Further, the acts in question constituted speech protected by the First Amendment. (See *Woolsey v. Ojeda* (S.D.W.Va. 2019) 363 F.Supp.3d 688 [posting of video criticizing a state senator and candidate for U.S. Congress]; *Perez v. Tedford* (W.D.Tex., Oct. 22, 2013, SA-13-CV-429-XR) 2013 WL 5740256 [2013 U.S.Dist. Lexis 151149] [Facebook post criticizing police officers].)[6] Because perjury does not constitute a form of speech protected by the First Amendment, we need not discuss the threat level.[7]

---

[6]     *Perez v. Tedford, supra*, 2013 WL 5740256 is an unpublished case.

[7]     In appellants' reply brief, they cite several cases for the first time, thus depriving respondent of an opportunity to discuss

15

Appellants argue the trial court erred in failing to construe their allegations in the light most favorable to them. (Citing *Noonan v. Kane* (3d Cir. 2017) 698 Fed.Appx. 49, 53-54 [finding pleadings sufficient where they alleged "at least three specific instances in which Defendants (or associates at their direction) threatened them"]; *Van Deelen v. Johnson* (10th Cir. 2007) 497 F.3d 1151, 1157 ["If accepted as credible by a jury, Mr. Van Deelen's allegations of physical and verbal intimidation, including a threat by a deputy sheriff to shoot him if he brought any more tax appeals, would surely suffice under our precedents to chill a person of ordinary firmness from continuing to seek redress for (allegedly) unfair property tax assessments"].) No amount of favorable interpretation can change respondent's

---

these cases. However, the cited cases are distinguishable for the same reason as *Watison, Schleig*, and the district court cases discussed above. *MacIntosh v. Clous* (6th Cir. 2023) 69 F.4th 309, 313-314, involved threats of violence directed at an attendee of a meeting of a county commission who spoke at the meeting against the Proud Boys group and the behaviors the group endorses. In *McMaster v. Spearman* (E.D.Cal., Sept. 5, 2014, No. 1:10-cv-01407-AWI-SKO(PC)) 2014 WL 4418104 [2014 U.S.Dist. Lexis 124466], a prison official asked an inmate to withdraw his appeal of a grievance involving an incident in which he had been beaten. In *Okwedy v. Molinari* (2d Cir. 2003) 333 F.3d 339, 344, a public official sent a letter to a media company asking the company to remove a billboard condemning homosexuality. And in *National Rifle Assn. of America v. Cuomo* (N.D.N.Y. 2018) 350 F.Supp.3d 94, 106, the plaintiff alleged "'backchannel threats' to banks and insurers with ties to the NRA that they would face regulatory action if they failed to terminate their relationships with the NRA." All cases discussed in appellants' reply brief involved threats against protected activity, not perjury.

16

words, which are memorialized in the record and were attached as an exhibit to appellants' SAC. Those words contained no threat to any individual making a legitimate request for accommodation—only to those who intended to perjure themselves to avoid the vaccination. Such perjury is not protected by the First Amendment. Appellants have thus failed to meet the second element of their cause of action for First Amendment retaliation.

## C. *Fourth cause of action for violation of the Bane Act*

### 1. *Applicable law*

To state a cause of action for violation of the Bane Act, appellants must show "(1) intentional interference or attempted interference with a state or federal constitutional or legal right, and (2) the interference or attempted interference was by threats, intimidation or coercion." (*Allen v. City of Sacramento* (2015) 234 Cal.App.4th 41, 67.) However, speech alone "is insufficient to establish the requisite threat unless it includes threat of violence." (*Julian v. Mission Community Hospital* (2017) 11 Cal.App.5th 360, 395 (*Julian*).) As set forth in section 52.1, subdivision (k): "Speech alone is not sufficient to support an action brought pursuant to subdivision (b) or (c), except upon a showing that the speech itself threatens violence against a specific person or group of persons; and the person or group of persons against whom the threat is directed reasonably fears that, because of the speech, violence will be committed against them or their property and that the person threatening violence had the apparent ability to carry out the threat."

### 2. *Appellants have failed to state a claim*

As set forth above, to state a cause of action under section 52.1, "'there must first be violence or intimidation by threat of

17

violence.'" (*Gabrielle A. v. County of Orange* (2017) 10 Cal.App.5th 1268, 1290.) Appellants have failed to allege a threat of violence. Respondent's speech, attached to appellants' SAC, contained no threat of violence against appellants.

Appellants argue the law is not fully settled regarding the requirement that the speech must threaten violence against a specific person or group of persons. Yet they cite no authority that contradicts the plain language of section 52.1, subdivision (k), even though such authority would not be persuasive. (See *Shoyoye v. County of Los Angeles* (2012) 203 Cal.App.4th 947, 959 ["the multiple references to violence or threats of violence in the statute serve to establish the unmistakable tenor of the conduct that section 52.1 is meant to address"]; *City and County of San Francisco v. Ballard* (2006) 136 Cal.App.4th 381, 408 [affirming dismissal of § 52.1 claim on demurrer because plaintiff failed to allege "any conduct that rises to the level of a threat of violence or coercion"].)[8]

Appellants point to the "[y]ou lie, you die" language, arguing that a reasonable jury could find this statement to be a threat of violence that would deter somebody from exercising his rights. As discussed above, while the statement could potentially be interpreted to incorporate violence, there is no protected right to lie. Further, appellants did not include an allegation that they reasonably feared such violence would be committed against

---

[8] We decline to address *Gifford v. Hornbook Fire Protection District* (E.D.Cal., Sept. 14, 2021, No. 2:16-CV-0596-JAM-DMC) 2021 WL 4168532 [2021 U.S.Dist. Lexis 174806]. It is an unpublished case consisting only of findings and recommendations by a magistrate judge. Furthermore the case is not helpful to appellants.

18

them or that anyone threatening such violence had the apparent ability to carry out the threat, as required by section 52.1, subdivision (k).

Because appellants failed to allege that respondent made a threat of violence against them, or that they reasonably feared that violence would be committed against them or their property, their claim under the Bane Act fails as a matter of law.

The trial court committed no error in sustaining respondent's demurrer to the third and fourth causes of action in the SAC.

## II. Anti-SLAPP motion

### A. *Legal standards*

"[T]he anti-SLAPP statute is designed to protect defendants from meritless lawsuits that might chill the exercise of their rights to speak and petition on matters of public concern." (*Wilson v. Cable News Network, Inc.* (2019) 7 Cal.5th 871, 883-884.) An anti-SLAPP motion is analyzed in two steps. First, "'the moving defendant bears the burden of establishing that the challenged allegations or claims "aris[e] from" protected activity in which the defendant has engaged.'" (*Id.* at p. 884.) Second, if the first burden is met, "'the plaintiff must then demonstrate its claims have at least "minimal merit."'" (*Ibid.*)

### B. *Issue of public interest*

We need not address whether respondent's statements concerned an issue of public interest because even if they did, as set forth above, the third and fourth causes of action did not have minimal merit and were subject to dismissal at the pleading stage. However, because the parties have debated the issue at length and because the award of attorney fees rests upon the denial of the anti-SLAPP motion, we discuss it briefly.

19

Section 425.16, subdivision (e)(3) and (4) provides that a party has engaged in protected activity when he makes "(3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest," or engages in "(4) any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest."

We must "consider the context as well as the content of [the statements]" in determining whether the statements "further[] the exercise of constitutional speech rights in connection with a matter of public interest." (*FilmOn.com Inc. v. DoubleVerify Inc.* (2019) 7 Cal.5th 133, 149 (*FilmOn*).)  In doing so, "First, we ask what 'public issue or . . . issue of public interest' the speech in question implicates—a question we answer by looking to the content of the speech.  [Citation.]  Second, we ask what functional relationship exists between the speech and the public conversation about some matter of public interest.  It is at the latter stage that context proves useful." (*Id.* at pp. 149-150.)

There must be "'some degree of closeness' between the challenged statements and the asserted public interest." (*FilmOn, supra*, 7 Cal.5th at p. 150.)  "'[T]he statement must in some manner itself contribute to the public debate.'" (*Ibid.*)  We examine "whether [the] defendant—through public or private speech or conduct—participated in, or furthered, the discourse that makes an issue one of public interest." (*Id.* at p. 151.)

Respondent's statements concerning the Beverly Hills firefighters' requests for accommodation in the face of the vaccine mandate unquestionably concerned an issue of public interest. The statements, made in respondent's role as a public representative of the community, concerned the vaccine mandate,

20

certain firefighters' attempts to circumvent the mandate, and the impact that behavior would have on the community. The statements were made in a public setting and were purposely directed to the community at large to address an issue of public concern.

Appellants' arguments to the contrary are not well taken. Appellants argue they were not public figures but should be viewed as individual employees seeking accommodation. They further argue that a City employee's individual request for accommodation should not be treated as a matter of public concern. However, we are required to broadly construe the anti-SLAPP statute. (§ 425.16, subd. (a) ["this section shall be construed broadly"].) Respondent's comments did not single out any particular firefighter but instead spoke broadly about the large number of firefighters seeking accommodation. Neither appellant (nor any other firefighter) is mentioned by name, thus respondent does not address any single individual's request for accommodation. Instead, respondent referenced the Beverly Hills firefighters as a whole and noted how the actions of this group of firefighters, if disingenuous, would be harmful to the community.

The cases cited by appellants are distinguishable. In *Workman v. Colichman* (2019) 33 Cal.App.5th 1039, an individual sent a private e-mail to a real estate broker indicating that the individual was going to make renovations to his home that would decrease the value of a home the broker was selling. This private dispute did not translate into a matter of public concern just because a "'broad and amorphous public interest'" exists in protecting consumers from fraudulent real estate brokers. (*Id.* at pp. 1052-1053.) Respondent's statements here were different, as they were made in a public forum and

21

addressed policy surrounding a public health mandate during a global pandemic.

*Rivero v. American Federation of State, County and Municipal Employees, AFL-CIO* (2003) 105 Cal.App.4th 913 is also distinguishable. In *Rivero*, a public employee sued his union for distributing allegedly false information that he had been suspended from his job for soliciting bribes and practicing nepotism. The trial court denied the union's anti-SLAPP motion, and the *Rivero* court affirmed, holding that statements about an individual personnel dispute do not warrant First Amendment protection. (*Rivero*, at pp. 928-929.) However, as set forth above, respondent did not address individual personnel matters and did not refer to any firefighter by name. He did not violate the confidentiality of any individual firefighter, but instead spoke about the actions of a group of public employees as a whole. Respondent's generalized statements regarding the vaccine mandate and public health cannot be characterized as private personnel matters.

### C. *Appellants' claims do not have minimal merit*

As discussed above, appellants' claims lack minimal merit. The third cause of action for First Amendment retaliation is subject to dismissal because respondent's statements were not designed to chill protected conduct—only perjury. The fourth cause of action for violation of the Bane Act is subject to dismissal because appellants failed to allege a threat of violence or that they reasonably feared such a threat.

Because respondent's speech involved an issue of public concern, and appellants' claims lack merit, the anti-SLAPP motion was properly granted.

## III. Leave to amend

Appellants claim the trial court should have granted them leave to amend the SAC, since they have obtained additional evidence of respondent's animosity towards Sattley in the form of private messages.  Without citation to such evidence, and without providing any specificity as to the timing or content of such private messages, appellants merely assert this evidence would support their constitutional retaliation claims against respondent.

The trial court's decision to deny appellants' request for leave to amend is reviewed for abuse of discretion.  (*Jo Redland Trust, U.A.D. 4-6-05 v. CIT Bank, N.A.* (2023) 92 Cal.App.5th 142, 162.)  "To show an abuse of discretion, the plaintiff has the burden of demonstrating that 'there is a reasonable possibility the plaintiff could cure the defect with an amendment.'"  (*Ibid.*)  To meet this burden, the plaintiff "'must show in what manner he can amend his complaint and how that amendment will change the legal effect of his pleading.'"  (*Rakestraw v. California Physicians' Service* (2000) 81 Cal.App.4th 39, 43.)  Abstract assertions are insufficient.  Instead, the plaintiff must "set forth factual allegations that sufficiently state all required elements" of the relevant cause of action.  (*Ibid.*)  "Allegations must be factual and specific, not vague or conclusionary."  (*Id.* at p. 44.)

Appellants have failed to meet this burden.  Their vague allegations of new evidence do not show that such evidence could cure the defects in their allegations.  There was no abuse of discretion in the trial court's denial of appellants' request for leave to amend.[9]

---

[9]    The trial court did not address the parties' competing arguments concerning Berardinelli's standing to pursue a First

**DISPOSITION**

The orders are affirmed.  Respondent is awarded his costs of appeal.

_____
CHAVEZ, J.

We concur:


_____
LUI, P. J.


_____
HOFFSTADT, J.

---

Amendment retaliation claim.  Because we have affirmed the trial court's orders sustaining respondent's demurrer to the third and fourth causes of action and granting respondent's anti-SLAPP motion involving the same claims, we decline to address this issue.